# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jorge Hernandez-Roque,<br><br>           Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>           Respondents. | No. CV-14-01814-PHX-DJH (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Jorge Hernandez-Roque's ("Petitioner") Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (the "Petition"). Respondents have answered (Docs. 10, 16), and Petitioner has replied (Docs. 13, 17). The matter is deemed ripe for consideration.

The Petition contains four grounds for relief that allege the ineffective assistance of Petitioner's trial counsel. Respondents do not argue that the Petition is untimely or that Petitioner's claims are procedurally defaulted. The undersigned finds that all four grounds for relief are meritless. It is therefore recommended that the Court deny the Petition.

## I. BACKGROUND

Petitioner is currently incarcerated at the Arizona State Prison Complex in Yuma,

Arizona. After an August 2010 trial with co-defendant Juan Abundez Leyva ("Leyva"), a jury convicted Petitioner on two counts: (i) conspiracy to commit possession of marijuana for sale and (ii) possession of marijuana for sale having a weight that exceeds four pounds. (Doc. 1-1 at 9-10). Both counts are class two felonies under Arizona law. (*Id*. at 9). The trial court sentenced Petitioner to concurrent prison terms of 15.75 years on each count. (*Id*. at 11). The trial court also revoked Petitioner's probation on his prior felony convictions. (*Id*.).

### A. Facts Underlying Petitioner's Convictions

The following is a summary of the facts underlying Petitioner's convictions as recounted by the Arizona Court of Appeals in its July 2011 decision.[1] On June 17, 2009, police conducted surveillance on a house located on West Vista Avenue in Glendale, Arizona as part of a narcotics investigation. (*Id*. at 6). An officer observed a black Dodge truck (the "Dodge") parked on the street in front of the house. (*Id*. at 7). A black Toyota Camry (the "Camry") briefly stopped in front of the house, drove away, then returned approximately twenty minutes later and parked on the street in front of the house. (*Id*.). The driver of the Camry, Christopher Notice ("Notice"), entered the house. Several minutes later, Notice returned to the Camry and drove away. (*Id*.).

Shortly after the Camry left the premises, Petitioner exited the West Vista house, moved the Dodge onto the driveway, and went back inside the house. (*Id*.). Petitioner left the house a few minutes later carrying a large black plastic bag that contained "bulky material." Petitioner placed the bag under a piece of drywall in the truck bed of the Dodge, then drove away in the Dodge. (*Id*.).

Officers began mobile surveillance on both the Dodge and Camry. (*Id*.). After stopping at a gas station for approximately five minutes, the Dodge and Camry traveled to a golf course parking lot. (*Id*.). While Petitioner remained in the Dodge, Notice exited the Camry, grabbed the large black plastic bag from the Dodge's truck bed, and placed

---

[1] A state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1).

the bag in the trunk of the Camry. (*Id*. at 7-8). The Dodge and Camry then exited the parking lot. (*Id*. at 8).

Officers stopped the Camry and smelled a strong marijuana odor coming from inside the vehicle. (*Id*.). A K-9 officer arrived with his drug-sniffing dog, which alerted to the large black plastic bag. (*Id*.). The bag contained over seven pounds of marijuana. (*Id*.).

Other officers stopped the Dodge at approximately the same time the Camry was stopped. (*Id*.). The same K-9 officer who assisted in the stop of the Camry directed his dog to conduct a "free air sniff" around the Dodge. (*Id*. at 9). Although the dog alerted the officer that there were drugs in the vehicle, no drugs were found. (*Id*.). The K-9 officer opined that the dog smelled marijuana that was previously inside the Dodge. (*Id*.).

Officers later searched the West Vista house, and discovered marijuana of the same type found in the Camry's trunk. (*Id*. at 8).

**B. Direct Appeal, Post-Conviction Relief, and Petition for Review**

In its July 7, 2011 decision, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (*Id*. at 5-15). Petitioner did not petition the Arizona Supreme Court for review.

On September 13, 2011, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). (Doc. 13 at 13). On May 30, 2012, Petitioner's PCR counsel filed a PCR Notice and PCR Petition. (Doc. 10-1 at 22-25; Doc. 1-1 at 20). On September 12, 2012, the trial court denied the PCR Petition. (Doc. 1-1 at 76-77). Petitioner filed a Petition for Review in the Arizona Court of Appeals. (*Id*. at 79-91). On January 7, 2014, the Arizona Court of Appeals affirmed the trial court's denial of the PCR Petition. (*Id*. at 122-25). Petitioner did not seek further review by the Arizona Supreme Court.

On August 15, 2014, Petitioner initiated this federal habeas proceeding. (Doc. 1). In accordance with the Court's November 2014 Order (Doc. 7), Respondents answered the Petition. (Doc. 10). Respondents argued in their Limited Answer that the Petition

was filed after the expiration of the one-year statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996. (*Id*. at 9-16). Respondents' argument rested primarily on Petitioner's PCR Notice filed on May 30, 2012. In a September 2015 Order (Doc. 15), the undersigned observed that the Limited Answer did not address the PCR Notice filed on September 13, 2011. The undersigned noted that in light of the September 13, 2011 PCR Notice, the Petition appears to be timely. (*Id*. at 3). The undersigned ordered Respondents to address the September 13, 2011 PCR Notice. (*Id*.). In their Supplemental Answer filed on October 16, 2015, Respondents concede that the Petition is timely and address the claims presented in the Petition on the merits. (Doc. 16 at 5, 10-14). Petitioner has replied to Respondents' Supplemental Answer. (Doc. 17).

## II. LEGAL STANDARDS

### A. Reviewing Habeas Claims on the Merits

In reviewing the merits of a habeas petitioner's claims, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires federal courts to defer to the last reasoned state court decision. *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his or her claims either:

> 1. [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2. [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Richter*, 562 U.S. at 99.

As to the first entitlement to relief explained above, "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly established federal law if the state court (i) "applies a rule that contradicts the governing

- 4 -

law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

As to the second entitlement to relief explained above, factual determinations by state courts are presumed correct unless the petitioner can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). That is, a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court's decision. *Richter*, 562 U.S. at 101; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### B. Proving Ineffective Assistance of Counsel Under *Strickland v. Washington*, 466 U.S. 668 (1984)

The "clearly established federal law" for an ineffective assistance of counsel ("IAC") claim is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner arguing an IAC claim must establish that his or her counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner. *Strickland*, 466 U.S. at 687. This is a deferential standard, and "[s]urmounting *Strickland's* high bar is never an easy task." *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In the habeas context, the issue is whether there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal quotation marks and citation omitted).

In assessing the performance factor of *Strickland's* two-part test, judicial review "must be highly deferential" and the court must try not "to second-guess counsel's assistance after conviction." *Clark*, 769 F.3d at 725 (internal quotation marks and

- 5 -

citation omitted).  To be constitutionally deficient, counsel's representation must fall below an objective standard of reasonableness such that it was outside the range of competence demanded of attorneys in criminal cases.  *Id.*  A reviewing court considers "whether there is any reasonable argument" that counsel was effective.  *Rogovich v. Ryan*, 694 F.3d 1094, 1105 (9th Cir. 2012).

To establish the prejudice factor of *Strickland's* two-part test, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In other words, it must be shown that the "likelihood of a different result [is] substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

Although the performance factor is listed first in *Strickland's* two-part test, a court may consider the prejudice factor first.  In addition, a court need not consider both factors if the court determines that a petitioner has failed to meet one factor.  *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other).

### III.  DISCUSSION

Respondents concede that the Petition is timely.  Respondents do not raise the affirmative defense of procedural default, thus waiving the issue.  *See Franklin v. Johnson*, 290 F.3d 1223, 1229 (9th Cir. 2002).  Although a court may *sua sponte* raise the issue of procedural default, the undersigned has found that in this case, the interests of judicial economy are best served by reviewing Petitioner's claims on the merits rather than first analyzing possible procedural default issues.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that a district court may

address the merits without reaching procedural issues where the interests of judicial economy are best served by doing so); *Franklin*, 290 F.3d at 1232 ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

### A. Ground One: Alleged IAC for Trial Counsel's Failure to Interview Petitioner's Co-Defendant

"[T]he duty to investigate and prepare a defense is not limitless." *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (internal quotation marks omitted). The duty "does not necessarily require that every conceivable witness be interviewed or that counsel . . . pursue every path until it bears fruit or until all conceivable hope withers." *Id.* In presenting an IAC claim based on counsel's failure to call a witness, a petitioner must (i) identify the witness, *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985), *cert. denied,* 474 U.S. 979 (1985); (ii) show that the witness was available and willing to testify, *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988), *cert. denied,* 488 U.S. 910 (1988); and (iii) show that the witness' testimony would have been sufficient to create a reasonable probability that the jury would have had a reasonable doubt as to guilt, *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990), *cert. denied,* 498 U.S. 1091 (1991). Further, IAC claims based on a duty to investigate and call relevant witnesses "must be considered in light of the strength of the government's case." *Rios v. Rocha*, 299 F.3d 796, 808-13 (9th Cir. 2002).

As discussed, Petitioner was tried with co-defendant Leyva. Leyva was charged and convicted on two counts: (i) conspiracy to commit possession of marijuana for sale and (ii) possession of marijuana for sale. (Doc. 10-2 at 11, 240). Both counts resulted from the investigation of the West Vista house.[2] During the August 2010 trial, Detective

---

[2] Officers observed Leyva arrive at the West Vista house in a green Ford pickup truck with an individual named Christopher Peters ("Peters"). (Doc. 10-2 at 89-90). Leyva and Peters entered the house and exited approximately fifteen minutes later. (*Id.* at 91). Peters was carrying a black plastic bag and placed the bag in the pickup truck. (*Id.*). Peters entered the driver's side of the truck, Leyva entered the passenger's side, and Peters drove away. (*Id.*). Officers stopped the truck, and Leyva ran out the door. An

Cano testified that he interviewed Leyva after advising Leyva of his Miranda rights. (*Id.* at 145-46). Detective Cano asked Leyva to explain his involvement at the West Vista house. (*Id.* at 146). Leyva told Detective Cano that a co-worker at the painting company for which Leyva works "was looking to buy about five to seven pounds of marijuana." (*Id.*). Leyva "reached out to a friend named Jorge, who could provide pretty much five to seven pounds of marijuana. So [Leyva's co-worker] and Leyva got together in a vehicle, and Jorge told them to go to the [West Vista house]." (*Id.*). The trial court asked Detective Cano if Leyva was referring to Petitioner when Leyva identified the individual named "Jorge." (*Id.* at 151). Detective Cano stated "I don't know." (*Id.*).

Petitioner's PCR counsel hired a private investigator, who interviewed Leyva on July 18, 2011 and September 15, 2011 at the prison where Leyva is serving his sentences. (Doc. 1-1 at 37-38). The investigator stated that:

> [d]uring both interviews Leyva told me that Jorge Roque was not the 'Jorge' he was referring to in that interview. He said that Jorge Roque was not a participant in the incident that led to their arrest in Glendale. . . . After reviewing the transcript and watching the video of his interview [with Detective Cano], Leyva stated again, that he does not know who the person 'Jorge' is whom he was referring to in that statement to Glendale Police Department. Leyva stated numerous times that he was not referring to Jorge Roque in that interview.

(*Id.* at 38).

In Ground One of the Petition, Petitioner alleges that his trial counsel was ineffective for failing to interview Leyva before trial. (Doc. 1 at 6). Petitioner asserts that Leyva would have informed Petitioner's counsel that Petitioner is not the individual named "Jorge" whom Leyva called regarding the purchase of marijuana. Petitioner further asserts that "had counsel properly investigated the case, then the jury would not have been left to believe that Jorge Hernandez-Roque was 'Jorge Luis Vasquez-Munoz' who was actually the individual called about the drugs."[3] (*Id.*).

---

officer caught up to Leyva and arrested him. (*Id.* at 97-99).

[3] Jorge Luis Vasquez-Munoz is another individual arrested and charged as a result of the investigation of the West Vista house. (Doc. 1-1 at 25, 51).

1    The last reasoned state court decision reviewing the above claim is the January 7, 2014 Arizona Court of Appeals' ruling that affirmed the trial court's denial of Petitioner's PCR Petition. The Court of Appeals agreed with the trial court's ruling that even if Leyva's post-trial statements were credible, it is unlikely that he would have agreed to a pretrial interview with Petitioner's counsel. (Doc. 1-1 at 124). For the following reasons, Petitioner's claim in Ground One fails.

First, Petitioner has not presented any evidence that Leyva was willing to testify on Petitioner's behalf. Nor does the record reflect a reason why Leyva would have been willing to waive his Fifth Amendment right to remain silent. If Leyva testified as he told the private investigator that "[Petitioner] was not a participant in the incident that led to their arrest in Glendale," Leyva would risk incriminating himself. Only a participant would be able to accurately identify other participants. Leyva had ample reason not to waive his right against self-incrimination. Because Petitioner has not shown that Leyva was willing to testify, Petitioner's IAC claim in Ground One fails. *See Harden*, 846 F.2d at 1231-32.

Moreover, Leyva's statements to the private investigator are contradictory. Leyva told the investigator that the individual named "Jorge" with whom he discussed the purchase of marijuana was not Petitioner. (Doc. 1-1 at 38). Yet Leyva also told the investigator that "he does not know who the person 'Jorge' is whom he was referring to in that statement to Glendale Police Department." (*Id.*). Leyva's inconsistent statements do not show a substantial likelihood that the jury would have acquitted Petitioner had Leyva testified on Petitioner's behalf. *See Richter*, 562 U.S. at 112. Further, Detective Cano testified that he did not know whether Leyva was referring to Petitioner when he identified the name "Jorge." (Doc. 1-1 at 151). The jury thus was aware that Petitioner may not be the individual whom Leyva referenced in the interview with Detective Cano.

Finally, as recounted by the trial court:
> The State's case was largely circumstantial but quite strong. Defendant was seen acting in tandem with co-defendants, carrying a large bag later found to contain the marijuana in

> question, and a dog alerted on the truck he was driving for the presence of marijuana. He received numerous calls on his phone from co-defendant Leyva after his arrest. Finally, he made several incriminating statements against his own interest. Even if there had been no reference to "Jorge" by detective Cano, the outcome would have clearly been the same.

(*Id.* at 77). Given the strength of the state's case against Petitioner, Petitioner has not established a "substantial, not just conceivable" likelihood of a different result if the jury had heard the testimony of Leyva. *See Richter*, 562 U.S. at 112.

For the above reasons, Petitioner cannot establish the prejudice prong of the *Strickland* test. The undersigned therefore does not find that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Accordingly, it is recommended that the Court dismiss Ground One.

### B. Ground Two: Alleged IAC for Trial Counsel's Failure to Interview Detective Cano

An officer testified that when Petitioner was arrested, Petitioner's "phone kept going off. . . . Somebody kept calling him." (Doc. 10-2 at 65). The officer testified that the telephone number that was "continually calling" Petitioner was the same number that Leyva provided on his information form when booked. (*Id.* at 66-67). In Ground Two, Petitioner argues that his trial counsel was constitutionally ineffective for failing to interview Detective Cano "who held exculpatory evidence for Petitioner . . . ." (Doc. 1 at 7). Petitioner asserts that Detective Cano would have informed Petitioner's counsel that the number from which Leyva allegedly called Petitioner belonged to Christina Remedios ("Remedios"), a female acquaintance of Petitioner. (*Id.*).

The last reasoned state court decision regarding the claim in Ground Two is the trial court's September 12, 2012 decision denying the PCR Petition. The Arizona Court of Appeals' January 7, 2014 decision substantially incorporates the trial court's decision. The Court therefore may review the trial court's decision as part of the review of the Arizona Court of Appeals' decision. *Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir.

2014).

The trial court's decision noted that the phone number listed by Leyva when booked was the same phone number that appeared multiple times on Petitioner's phone immediately after his arrest. (Doc. 1-1 at 77). Testimony that the telephone number was registered to Remedios would not have prevented a reasonable jury from concluding that Leyva used the telephone number to call Petitioner. Respondents correctly observe that a prudent individual would not use a telephone registered in his or her own name to arrange a drug transaction. Petitioner has failed to establish that there is a "substantial, not just conceivable" likelihood of a different result if the jury had heard testimony that the telephone number was registered to Remedios. *See Richter*, 562 U.S. at 112. In other words, Petitioner has failed to establish the prejudice prong of *Strickland*.

The Arizona courts' rejection of Petitioner's claim presented in Ground Two was not contrary to, or involved an unreasonable application of, *Strickland* and was not an unreasonable determination of the facts based on the evidence in the record. The undersigned recommends that the Court dismiss Ground Two.

**C. Ground Three: Alleged IAC Based on Trial Counsel's "Individual and Cumulative Errors"**

Petitioner argues in Ground Three that his trial counsel was ineffective for allegedly failing to investigate and present evidence to the jury that there were no drugs found in Petitioner's truck the day he was arrested "deeming Petitioner actually innocent of the charges tried before the jury." (Doc. 1 at 8). Petitioner also argues that his counsel was ineffective for failing to present evidence to the jury that Petitioner and Leyva did not know each other and met for the first time at trial. (*Id.*). Petitioner reasserts his argument that his counsel should have discovered and presented evidence that the telephone number listed by Leyva and found on Petitioner's phone was registered to Remedios. (*Id.*). Petitioner contends that the "cummulative [sic] prejudice of all these factors not presented to the jury by defense counsel deems his performance deficient." (*Id.*).

Ground Three was raised in the PCR Petition. Citing to the same errors alleged

- 11 -

above, the PCR Petition argued that Petitioner was "prejudiced as a result of both Trial Counsel's individual and cumulative errors during the pre-trial investigation and trial." (Doc. 1-1 at 28-30, 36). Neither the trial court nor the Arizona Court of Appeals explicitly addressed the claim in their decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Although there may be an argument that Petitioner did not fairly present the claim in Ground Three to the Arizona Court of Appeals,[4] Respondents have waived the procedural default defense. In the interest of judicial economy, the undersigned has reviewed the IAC claim presented in Ground Three on the merits.[5]

In presenting Petitioner's defense, Petitioner's trial counsel focused on the lack of direct evidence showing that Petitioner is guilty. For example, Petitioner's trial counsel highlighted to the jury (i) that there were no photographs taken to verify the testifying officers' version of the events (Doc. 10-2 at 209) and (ii) the black bag containing marijuana that was found in the Camry was not tested for fingerprints (*Id.* at 211).

Although Petitioner disagrees with trial counsel's defense strategy, that disagreement does not constitute deficient performance on the part of Petitioner's trial counsel. *See Murray*, 746 F.3d at 457 (a "defendant's disagreement with trial counsel's

---

[4] The Arizona Court of Appeals stated that "[t]o the extent [Petitioner] otherwise contends the trial court erred in rejecting his claims, he does not develop any meaningful arguments. Thus, he has waived any such arguments on review." (Doc. 1-1 at 124-25).

[5] One of the claims presented in Petitioner's PCR Petition argued that Petitioner is actually innocent of the crimes underlying his convictions. (Doc. 1-1 at 33-35). To the extent Ground Three presents a freestanding actual innocence claim, the claim is not cognizable in this federal habeas proceeding. *Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *see also Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995); *Jordan v. Sec'y Dep't of Corr.*, 485 F.3d 1351,1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based on a claim of actual innocence . . . in non-capital cases."); *Wright v. Stegall*, 247 F. App'x 709, 712 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent.").

1 strategy does not constitute deficient performance on the part of trial counsel"). A court
2 reviewing the performance of counsel must make "every effort . . . to eliminate the
3 distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged
4 conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v.*
5 *Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689); *Edwards v.*
6 *Lamarque*, 475 F.3d 1121, 1127 (9th Cir. 2007) (court cannot apply "fabled twenty-
7 twenty vision of hindsight" (internal quotation omitted)). Upon review of the record, the
8 undersigned finds that the performance of Petitioner's trial counsel was reasonable under
9 prevailing professional norms. *Clark*, 769 F.3d at 725.

10 Further, contrary to Petitioner's assertion, the jury heard evidence that no drugs
11 were found in the Dodge. On both direct and cross-examination, the K-9 officer testified
12 that no drugs were found in the Dodge. (*Id.* at 117, 127). Petitioner's assertion that his
13 counsel should have presented evidence that Petitioner and Leyva "actually met for the
14 first time at trial and never knew each other prior to that date . . . ." is also meritless.
15 (Doc. 1 at 8). Presentation of such evidence would have required Leyva and/or Petitioner
16 to testify. Petitioner has not shown that Leyva was willing to testify on Petitioner's
17 behalf. Nor has Petitioner shown that Petitioner was willing, but was denied the
18 opportunity, to waive his Fifth Amendment right to remain silent and testify at trial.

19 In addition, as explained in the preceding section, there is not a substantial
20 likelihood that the jury would have acquitted Petitioner if it had heard testimony that the
21 telephone number connecting Leyva and Petitioner was registered to Remedios.

22 Finally, to reiterate, the state's case against Petitioner was strong. Officers
23 testified that they saw Petitioner place a large bag in the bed of a Dodge truck, drive away
24 in the truck, then stop in a parking lot and allow an individual to take the bag out of the
25 truck and place it in a different vehicle's trunk. Officers later determined that the bag
26 contained marijuana of the same type found in the West Vista house from which
27 Petitioner exited with the large bag. A K-9 officer's drug-sniffing dog made "residual
28 alerts" indicating that drugs had been in the Dodge. (Doc. 10-2 at 117). Petitioner's

claim in Ground Three does not satisfy the prejudice prong of the *Strickland* test.

Petitioner has failed to show that the Arizona courts' rejection of the claim presented in Ground Three was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Accordingly, it is recommended that the Court dismiss Ground Three.

**D. Ground Four: Alleged IAC for Trial Counsel's Failure to File a Motion to Sever Petitioner's Trial from Leyva's Trial**

In his fourth ground for relief, Petitioner asserts that his trial counsel was ineffective for failing to file a motion to sever Petitioner's trial from Leyva's trial. (Doc. 1 at 9). Petitioner asserts that he and Leyva had antagonistic defenses. The trial court rejected this claim because a motion to sever likely would not have succeeded. (Doc. 1-1 at 77).

Under Arizona law, a defendant is entitled to severance based on antagonistic defenses only if he or she can demonstrate that his defense and the defense of his co-defendant are mutually exclusive. "[D]efenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *See State v. Cruz*, 672 P.2d 470, 474 (Ariz. 1983).

Petitioner and Leyva were arrested in conjunction with two separate incidents involving two separate bags of marijuana and two separate third parties (i.e. Notice and Peters). Officers did not see Petitioner and Leyva interact with one another. Both Petitioner and Leyva denied possessing marijuana and conspiring to commit possession of marijuana for sale. Petitioner and Leyva's claims of innocence did not require the jury to disbelieve the core of evidence offered on behalf of either defendant. Therefore, the trial court likely would have denied a motion to sever. The failure of Petitioner's trial counsel to file a futile motion to sever does not constitute constitutionally deficient performance. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (an omitted action must be shown to be meritorious to support an ineffective assistance of counsel claim); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion

does not constitute ineffective assistance of counsel."); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take futile action can never be deficient performance); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (the "[f]ailure to raise a meritless argument does not constitute ineffective assistance"); *Hernandez v. Harrington*, 720 F.Supp.2d 1161, 1171–72 (C.D. Cal. 2010) (trial counsel held not to be ineffective for failing to make a motion to sever when it was "highly unlikely" that the motion would have been granted).

As Petitioner cannot establish the performance prong of the *Strickland* test, the IAC claim in Ground Four fails. Ground Four therefore should be dismissed because Petitioner has failed to show that the Arizona courts' rejection of the claim was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that the Court deny and dismiss the Petition (Doc. 1) with prejudice.

Accordingly,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because Petitioner has not made a substantial showing of the denial of a constitutional right in his claims for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and

Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 27th day of May, 2016.

*Eileen S. Willett*
United States Magistrate Judge